# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| E.R., M.T., and C.M. by and through their Aunt and Guardian *Ad Litem* ANGELA WILSON, and ANGELA WILSON as Personal Representative of the ESTATE OF MICHAEL ROBINSON, | |
| *Plaintiffs,* | Case No.: |
| vs. | JURY TRIAL DEMANDED |
| MID-AMERICA TRANSPLANT SERVICES; TOMMY GREENWELL, Individually and In His Official Capacity; JOSH BOST, Individually and In His Official Capacity; MICHAEL COLEMAN, Individually and In His Official Capacity; RICHARD COBBS, Individually and In His Official Capacity; TERRY ARMSTRONG, Individually and In His Official Capacity; KRISTIN TATE, Individually and In Her Official Capacity; OFFICER CROOKS, Individually and In His Official Capacity; TORRANCE AKINS, Individually and In His Official Capacity; CHAD NIXON, Individually and In His Official Capacity; RON WARREN, Individually and In His Official Capacity; PEMISCOT COUNTY; AND DOES 1 THROUGH 10 | |
| *Defendants.* | |

## COMPLAINT FOR DAMAGES AND JURY DEMAND

COME NOW Plaintiffs by and through their undersigned counsel and hereby state the following in support of their Complaint for Damages and Jury Demand: This is a complaint for damages based upon negligence by MID-AMERICA TRANSPLANT SERVICES, a St. Louis, MO company, and violations of federal and state civil rights, and state law, committed by PEMISCOT COUNTY and its respective officials, police officers, employees and/or agents. Their wrongful acts and/or omissions caused the painful and unnecessary death of Michael Robinson ("Mr. Robinson"), a 33 year-old father of three young girls.

As explained further below, Defendants took Mr. Robinson into custody in their jail and denied him insulin and crucial medical treatment knowing that he was a severe diabetic. Defendants detained Mr. Robinson on several prior occasions on which they knew he needed insulin, and Defendants previously provided it to him. Nevertheless, on this occasion Defendants denied Mr. Robinson insulin and necessary medical treatment – and Mr. Robinson died.

## JURISDICTION

1.   This case is brought pursuant to 42 U.S.C. §§ 1983 and 1988. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343 (1-4). This court also has supplemental jurisdiction over the state law wrongful death, survival, other state law claims, and over defendants, pursuant to 28 U.S.C. § 1367.

## VENUE

2.   The claims alleged herein arose from events or omissions occurring in the Eastern District of Missouri. Therefore, venue lies in the Eastern District of Missouri. 28 U.S.C. 1391(b)(2).

## **PARTIES**

### PLAINTIFFS

3.  Plaintiff E.R. ("E.R."), a minor and daughter of Michael Robinson, was a
    resident and private citizen of the State of Missouri, as well as an heir and
    real party in interest as to the Estate of Michael Robinson, at all times
    material to this Complaint.

4.  Plaintiff M.T. ("M.T."), a minor and daughter of Michael Robinson, was a
    resident and private citizen of the State of Missouri, as well as an heir and
    real party in interest as to the Estate of Michael Robinson, at all times
    material to this Complaint.

5.  Plaintiff C.M. ("C.M."), a minor and daughter of Michael Robinson, was a
    resident and private citizen of the State of Missouri, as well as an heir and
    real party in interest as to the Estate of Michael Robinson, at all times
    material to this Complaint.

6.  Plaintiff Estate of Michael Robinson ("Estate"), is the estate of now
    deceased Michael Robinson. Its personal representative is Angela Wilson
    (application pending in Case No. 17PE-PR00055). Ms. Wilson is Mr.
    Robinson's sister and the aunt of all three minor plaintiffs.

### DEFENDANTS

7.  Plaintiffs are informed, believe and thereupon allege that Defendant MID-
    AMERICA TRANSPLANT SERVICES, (herein after "MTS"), is a
    corporation, or other business entity unknown, existing and operating
    under the laws of the State of Missouri, with its principal place of business
    in St. Louis, Missouri.

8.  Plaintiffs are informed, believe and thereupon allege that defendant MTS
    is an employer, principal or in some other manner controls the activities of

Complaint for Damages and Jury Demand

medical professionals licensed by the State of Missouri to harvest organs in said State and further, that those persons hold themselves out as possessing that degree of skill, expertise, learning and ability ordinarily possessed and exercised by other practitioners engaged in medical services and as being skilled in procedures and other services having to do with the harvesting of organs under such license.

9. Plaintiffs are informed, believe, and thereupon allege that Defendant TOMMY GREENWELL ("SHERIFF" OR "GREENWELL") was at all times material herein a policy maker, director and/or supervisor and acting under color of law within the course and scope of his employment and office as the Sheriff of Pemiscot County. He is being sued individually and in his official capacity.

10. Plaintiffs are informed, believe, and thereupon allege that Defendant JOSH BOST ("BOST") was at all times material herein a policy maker, director and/or supervisor and acting under color of law within the course and scope of his employment as an employee, agent and/or law enforcement officer of Pemiscot County. He is being sued individually and in his official capacity.

11. Plaintiffs are informed, believe, and thereupon allege that Defendant MICHAEL COLEMAN ("COLEMAN") was at all times material herein a policy maker, director and/or supervisor and acting under color of law within the course and scope of his employment as an employee, agent and/or law enforcement officer of Pemiscot County. He is being sued individually and in his official capacity.

12. Plaintiff is informed, believes and thereupon alleges that Defendant RICHARD COBBS ("COBBS") was at all times material herein acting under color of law within the course and scope of his employment as an

employee, agent and/or law enforcement officer of Pemiscot County. He is being sued individually and in his official capacity.

13. Plaintiff is informed, believes and thereupon alleges that Defendant TERRY ARMSTRONG ("ARMSTRONG") was at all times material herein acting under color of law within the course and scope of his employment as an employee, agent and/or law enforcement officer of Pemiscot County. He is being sued individually and in his official capacity.

14. Plaintiff is informed, believes and thereupon alleges that Defendant KRISTIN TATE ("TATE") was at all times material herein acting under color of law within the course and scope of her employment as an employee, agent and/or law enforcement officer of Pemiscot County. She is being sued individually and in her official capacity.

15. Plaintiffs are informed, believe and thereupon allege that Defendant OFFICER CROOKS ("CROOKS") was at all times material herein acting under color of law within the course and scope of his employment as an employee, agent and/or law enforcement officer of Pemiscot County. He is being sued individually and in his official capacity.

16. Plaintiffs are informed, believe and thereupon allege that Defendant TORRANCE AKINS ("AKINS") was at all times material herein acting under color of law within the course and scope of his employment as an employee, agent and/or law enforcement officer of Pemiscot County. He is being sued individually and in his official capacity.

17. Plaintiffs are informed, believe and thereupon allege that Defendant CHAD NIXON ("NIXON") was at all times material herein acting under color of law within the course and scope of his employment as an employee, agent and/or law enforcement officer of Pemiscot County. He is being sued individually and in his official capacity.

18. Plaintiffs are informed, believe and thereupon allege that Defendant RON WARREN ("WARREN") was at all times material herein acting under color of law within the course and scope of his employment as an employee, agent and/or law enforcement officer of Pemiscot County. He is being sued individually and in his official capacity.

19.   Plaintiffs are informed, believe, and thereupon allege that Defendant PEMISCOT COUNTY ("COUNTY") is a duly constituted governmental entity in the State of Missouri, and is, or was, the employer of all individually named Defendants including, but not limited to, those who are sued in their individual and official capacities, as well as one, or all, of Defendant DOES 1 through 10. COUNTY is substantially and properly insured against liability for its acts and omissions and those of its officers, employees and agents.

20. Plaintiffs are informed, believe and thereupon allege that at all times herein mentioned, SHERIFF, was the agent, servant, employee and/or partner of COUNTY, and each of them, as such, were acting within the course and scope of such agency and employment.   COUNTY and SHERIFF operate the PEMISCOT COUNTY Jail and employ and/or otherwise engage all persons who work there with the responsibility of caring for, safeguarding, and managing the well-being of detainees. COUNTY when acting as a principal, and SHERIFF as agent, were negligent in the selection and hiring of each and every other defendant as its agent, servant, employee and/or partner.

21. The identities, capacities and/or or nature of involvement of defendant Does 1 through 10 are presently unknown to plaintiffs.  Plaintiffs therefore sue such persons using Does as fictitiously-named defendants.  Plaintiffs are informed and believe, and based upon that belief allege, that there is likely to be evidentiary support to prove that each Doe was involved in

6

some manner and legally responsible for the misconduct and/or breaches of duty alleged below.  Plaintiffs will seek leave of court to amend the complaint to name the Doe defendants upon learning their true identities and roles in the actions complained of herein.

22. All of the facts, acts, omissions, events and circumstances herein mentioned and described occurred in the Eastern District of Missouri, and the corporate and/or entity defendants, and each of them, are residents of the State of Missouri, located in the Eastern District of Missouri, and/or have their principal place of business in said federal judicial district and State, and/or are doing business therein.

23. Plaintiffs are informed and believe, and based upon that belief alleges that all Defendants employed by COUNTY were, at all times relevant and material to this complaint, acting within the course and scope of their employment duties for COUNTY, and under color of law.  Plaintiffs are informed, believe and thereupon allege that each of the individual defendants' acts were known to, discovered by, approved and/or ratified by defendant COUNTY, by and through its policy makers, decision makers, officials, officers and/or supervisors, including defendant SHERIFF, and applicable Doe defendants.

24. Plaintiffs are informed, believe and thereupon allege that all Defendants employed by Doe Defendants, at all times relevant and material to this complaint, acting within the course and scope of their employment duties for Doe Defendants, and each of them, and under color of law.  Plaintiffs are informed, believe and thereupon allege that each of the individual defendants' acts were known to, discovered by, approved and/or ratified by Doe Defendants, by and through policy makers, decision makers, and/or supervisors, including applicable Doe defendants.

25. Plaintiffs are informed, believe and thereupon allege that officials, supervisors, policy makers and other individuals with the authority to set or modify municipal and/or departmental policy, *dejure* or *defacto*, of Defendant COUNTY, participated in, approved of, ratified and/or failed to prevent the acts by all Defendants and Does, complained of by Plaintiffs.

26. Plaintiffs are informed, believe and thereupon allege that at all times herein mentioned, each of the Defendants; including officials, supervisors, watch commanders and other policy makers from Defendant COUNTY, and their agents; was the agent, employee or co-conspirator of one other, some, or all of their Co-defendants. Plaintiffs are informed, believe and thereupon allege that each of the Defendants, acting individually, and/or in concert with each other, engaged in a common plan to wrongfully deprive decedent Michael Robinson ("Mr. Robinson") of his respective rights to: life and the enjoyment of life, free speech, freedom from cruel and unusual punishment, due process of law -- as well as reasonable and/or effective medical diagnosis and/or treatment.

27. Each and all of the things done by each "COUNTY DEFENDANT" (County, Greenwell, Bost, Coleman, Cobbs, Armstrong, Tate, Crooks, Akins, Nixon and Warren, and each of them) against  Mr. Robinson, as mentioned in this entire Complaint, were done, partially if not entirely, because of Mr. Robinson's speech in criticism of his treatment at the hands of the police, requests for medical assistance, and defendants' desire to punish Mr. Robinson for making statements to officials which on prior occasions tended to result in his early release from confinement due to his dire medical condition.

28. In doing each and all of the things herein mentioned, or neglecting or intentionally failing to rectify said misconduct, each and ALL COUNTY DEFENDANTS were acting pursuant to a *defacto* policy and within the

8

scope of such agency, employment and conspiracy and with full permission, knowledge, approval, ratification and support of each other.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### *The Death of Michael Robinson*

29. At the time of his death, on August 15, 2015, Michael Robinson was a 33-year old African-American man and loving father of three young girls, E.R., M.T., and C.M., the plaintiffs in this case. Mr. Robinson was also a severe diabetic, for which he required insulin shots two-to-three times daily in order to manage his glucose levels to prevent death.

30. In the early morning hours of Friday, August 14, 2015, Mr. Robinson was staying at the home of his fiancé, Clara Clevenger, at 922 Lewis Street, in Kennett, Missouri. Kennett Police officers arrived at Ms. Clevenger's home, where they arrested Mr. Robinson pursuant to a warrant issued for outstanding child support payments owed by Mr. Robinson. He was taken into custody by Kennett police and transported to Dunklin County Jail.

31. At approximately 1:00 p.m. that afternoon, Mr. Robinson was transported to the Pemiscot County Jail facility (the "Jail") in Caruthersville, Missouri, and placed in a group holding cell. 33 hours later he was dead or dying on the floor of the cell, as a result of defendants' callous refusals to allow him access to his diabetes medication and provide medical attention – despite Mr. Robinson's, other inmates' and a family member's repeated pleas for his life and her desperate efforts to provide his insulin.

32. Mr. Robinson was taken into custody without his insulin medication. There was no supply of insulin at the Jail, and upon information and belief, there were no medical personnel on staff or on call at the Jail for the

entire period of Mr. Robinson's detention that were trained and/or willing to administer insulin shots.

33. During the time of Mr. Robinson's August 2015 detention in the Pemiscot County Jail, Mr. Robinson requested medical assistance from the Jail deputies on duty, to wit COOBS, CROOKS, WARREN, BOST, NIXON, AKINS, ARMSTRONG, and Nurse TATE. Further, other detainees requested medical assistance for Mr. Robinson from those same defendants, but he was not given any.

34. During the time of Mr. Robinson's August 2015 detention in the Pemiscot County Jail, all COUNTY DEFENDANTS – Pemiscot County, Greenwell, Bost, Coleman, Cobbs, Armstrong, Tate, Crooks, Akins, Nixon and Warren, and each of them, had actual and/or constructive knowledge of Mr. Robinson's severe diabetes.

35. During the time of Mr. Robinson's August 2015 detention in the Pemiscot County Jail, all COUNTY DEFENDANTS – Pemiscot County, Greenwell, Bost, Coleman, Cobbs, Armstrong, Tate, Crooks, Akins, Nixon and Warren, and each of them, were aware of his dire need for medical attention and near fatal condition through their own observations of Mr. Robinson and/or through information conveyed to them through Jail staff or detainees.

36. During the time of Mr. Robinson's August 2015 detention in the Pemiscot County Jail, all COUNTY DEFENDANTS – Pemiscot County, Greenwell, Bost, Coleman, Cobbs, Armstrong, Tate, Crooks, Akins, Nixon and Warren, and each of them, chose not to even bother with attempting to provide Mr. Robinson medical care until he had gone into irreversible diabetic shock – even though they were aware all along of his dire need for medical attention and near fatal condition through their own observations

of Mr. Robinson and/or through information conveyed to them through Jail staff or detainees.

37. Instead, upon information and belief, the Jail deputies placed Mr. Robinson a solitary confinement holding cell, and further denied him medical assistance, as punishment for his repeated requests for medical assistance due to his need for insulin.

38. Ms. Clevenger went to visit Mr. Robinson at the Jail at approximately 4:00 p.m. on August 15, 2015, which was the first time the Jail had opened for visiting hours since Michael had been placed in Jail custody the previous day.

39. When Mr. Robinson was brought into the visitors viewing room, he was so weak and in distress that he required the assistance of the guard to move his extremities.  Ms. Clevenger observed Mr. Robinson to be slumped over in a seated position with his head down.  His eyes were glazed over, and he was nonresponsive when she addressed him and did not appear to recognize who she was.  He plainly and unmistakably appeared too weak and disoriented to lift his head or hold the phone receiver to his face.

40. Ms. Clevenger asked one of the other inmates in the cell to check on Mr. Robinson's condition.  The other cellmate attempted to lift Mr. Robinson's head up, but was not able to.  At this point, Ms. Clevenger told the guard on duty that Mr. Robinson was extremely ill, appeared to be having complications from his diabetes, and needed immediate medical attention. The guard simply nudged Mr. Robinson, walked away, and completely ignored Ms. Clevenger's pleas for help.

41. Thereafter, Ms. Clevenger observed that two deputies supported and stood up Mr. Robinson's body in order to remove him from the visiting room cell.

42. Ms. Clevenger left the visiting room and went to the Jail dispatcher on duty and reported that Mr. Robinson was extremely sick and she was being ignored by the guards.  The dispatcher ignored her as well, taking no action.

43. Ms. Clevenger left the building and called the Jail from her car, and explained again that Mr. Robinson was a severe diabetic and was on the verge of a coma and needed medical attention immediately.  The Jail deputy that answered the phone responded that, "we have been monitoring him all day," and told Ms. Clevenger "not to worry about it."  Ms. Clevenger asked if Mr. Robinson's blood sugar levels had been checked. The deputy told her that Mr. Robinson's blood sugar had been checked, and that the blood sugar monitor had not given a number, but had simply read "HIGH.".

44. Ms. Clevenger explained to the deputy that the "HIGH" reading on the monitor indicated that Mr. Robinson's blood sugar level was higher than the monitor's top range, thus dangerously high.  The deputy simply responded that "we are monitoring him," and ended the call.

45. Ms. Clevenger telephoned Mr. Robinson's sisters, Lakeisha Robinson ("Lakeisha") and Angela Robinson ("Angela") to inform them of the situation.  Angela called the Jail and was told by the deputy that there were no medical staff on duty at the Jail and no medications available on site.

46. Angela asked whether Mr. Robinson's family could bring the medication he needed to the Jail, to which the deputy responded they could. Ms. Clevenger went back to her home to retrieve Mr. Robinson's insulin and returned to the Jail with the insulin at approximately 5:30 p.m. that same day.

47. When she entered the Jail and explained to the deputies that she had Mr. Robinson's insulin and asked if she could administer it to Mr. Robinson,

she was told to be seated by one of the guards, who then explained to her that, "[Mr. Robinson] is not going to the hospital, he just wants out of jail and we are not falling for it."  Ms. Clevenger pleaded that Mr. Robinson was extremely sick and had been admitted to the intensive care unit three times in the previous month due to his diabetes condition, the guard responded that, "that is not my problem."

48. Ms. Clevenger asked if the Jail staff would give Mr. Robinson the insulin and again the deputy responded "no."  Instead, the deputy told Ms. Clevenger he would place the insulin on Mr. Robinson's bed and Mr. Robinson could administer the insulin shots to himself.  Ms. Clevenger said that Mr. Robinson would not be able to give himself shots given his severely incapacitated condition, to which the deputy replied "that's not my problem."  In desperation, Ms. Clevenger asked to speak with the Sheriff, but the deputy responded that the Sheriff was not available until the following Monday.  Ms. Clevenger begged for Mr. Robinson's life, saying that the Jail was going to let him die, to which the guard responded once again, "that's not my problem."

49. At approximately 6:30 p.m. Ms. Clevenger telephoned the Pemiscot County Sheriff's phone number and left a voicemail message begging for someone to help Mr. Robinson, and explaining that he was locked up in the Jail and severely diabetic and that the Jail staff refused to give him medical attention or take him to the hospital.  Ms. Clevenger telephoned the Jail once more at approximately 7:00 p.m.  A female deputy answered the phone and assured Ms. Clevenger that she would check on Mr. Robinson and if he needed treatment it would be provided, however none was provided.

50. At some point during Mr. Robinson's detention at the Jail, Mr. Robinson was returned to the group holding cell and, upon information and belief,

the other inmates in the cell began telling the guards that Mr. Robinson was sick and throwing up, lying in the fetal position on the cell floor, and needed medical attention.  The guards, upon information and belief, took Mr. Robinson out of the cell and strapped him into a confinement chair because he was unable to hold himself up.

51. Despite Mr. Robinson's obviously terrible physical condition, the Jail deputies still refused to provide him any medical attention whatsoever or call for emergency medical services.  Even though, just steps from the Jail facility is a Medic One 24-hour emergency ambulance service.

52. Upon information and belief, at some point later that evening, SHERIFF called the Jail and asked whether it was necessary to transport Mr. Robinson to the hospital, but took no action to go to the Jail and take control of the situation to safeguard Mr. Robinson's well-being.

53. Upon information and belief, the Jail deputies waited until or about 10:00 p.m., approximately two hours after GREENWELL'S call, before again checking on Mr. Robinson's condition.  Upon information and belief, when the guards checked Mr. Robinson's condition thereafter, he was completely unable to walk and the guards unstrapped him from the chair and threw his body back onto the jail cell floor.  At this time a call was placed for medical transport.

54. Approximately 30 minutes later Mr. Robinson's body was transported to the Pemiscot Memorial Hospital Emergency Intake center ("Pemiscot Memorial") and admitted.

55. At approximately 11:30 p.m. Pemiscot Memorial staff called Angela and advised her to gather the family and come immediately to the hospital. Upon her arrival, Angela was met outside the door to Mr. Robinson's treatment room by the attending physician, who told her that Mr. Robinson

was on life support, his glucose level was 2500, and that he had undergone cardiac arrest.

56. According to the American Diabetes Association, the normal glucose range is between 80 and 180 depending on the individual's time between meals.

57. Police officers, believed to be Pemiscot County Sheriff deputies and other COUNTY officers, were already inside Mr. Robinson's treatment room when his family members arrived at Pemiscot Memorial.  When his family attempted to enter the treatment room, the officers shut the door abruptly and prevented the family from entering.

58. Eventually, that evening Mr. Robinson's family was permitted to examine Mr. Robinson's body.  His body was cold and stiff to the touch.  His eyes were sunken into this head and there appeared to be no life left in him. The hospital staff stated that Mr. Robinson's body temperature had been recorded at 80 degrees before he was received at the hospital, and that they had tried to revive him but were not successful.

59. One nurse stated that Mr. Robinson's body was in especially poor condition, and she had never seen a patient come in looking like this. Angela asked the nurse to tape up his eyes before Mr. Robinson's children arrived.

60. Sometime after 12:00 a.m. on August 16, 2015, Mr. Robinson's body was transported from Pemiscot Memorial to St. Francis Memorial Hospital in Cape Girardeau, Missouri ("St. Francis") by ambulance.  The doctor informed Angela that Mr. Robinson was being transferred to St. Francis to confirm whether there was any brain activity detected in Mr. Robinson.

61. A neurologist from St. Francis telephoned Angela and reported that no brain activity had been detected in Mr. Robinson.  At this point, Angela gave consent to take Mr. Robinson's body off of life support.

62. At approximately 2:00 a.m. a team of organ transplant specialists belatedly arrived at St. Francis from Mid-America Transplant Services ("MTS") based in St. Louis, Missouri, to attempt preservation of Mr. Robinson's organs as he was an organ donor.  Angela was telephoned by one of the MTS professionals around 3:00 a.m.

63. The MTS employee told Angela that they had been unable to salvage any of Mr. Robinson's organs because they had already deteriorated too much. The St. Francis staff indicated that they were very concerned about the condition of Mr. Robinson's body and recommended that Angela have a forensic autopsy performed.

64. Later that day, Angela had Mr. Robinson's body delivered to Ste. Genevieve County Memorial Hospital in Ste. Genevieve, Missouri to perform an autopsy on Mr. Robinson's body.

65. Mr. Robinson suffered and endured substantial, prolonged and excruciating pain and suffering due to the acts and omissions of all defendants, and each of them.

66. Mr. Robinson, other detainees, Ms. Clevenger and Angela Mr.
Robinson, other detainees, Ms. Clevenger and Angela repeatedly requested the defendants to arrange for medical care numerous times during his detention when he was exhibiting obvious and objective symptoms of blood sugar imbalance, including but not limited to: shakiness, sweating, feeling cold and faint, confusion, anxiety, muscle weakness, slurred speech, inability to stand, tongue biting, labored breathing and vomitus. Defendants deliberately disregarded all pleas for medical care for Mr. Robinson from the time of his intake until the time of his death despite the obvious decline in Decedent's medical status.

*COUNTY Defendants' Knowledge of Mr. Robinson's Condition*

67. Prior to detaining Mr. Robinson on August 15, 2015, defendant COUNTY detained Mr. Robinson on no less than five separate occasions upon which it was noted at intake that he was an insulin dependent diabetic.

68. On Mr. Robinson's November 6, 2007, COUNTY Jail intake form the following question(s), answer(s) and/or information is recorded:

> "ARE YOU DIABETIC? ARE YOU INSULIN DEPENDANT?" "YES."

69. On Mr. Robinson's November 29, 2007, COUNTY Jail intake form the following question(s), answer(s) and/or information is recorded:

> "ARE YOU DIABETIC? ARE YOU INSULIN DEPENDANT?" "YES."
>
> "MEDS HUNALOG LANTUS SOLOSTAR"
>
> "HAD MEDS ABOVE WITH HIM"

70. On Mr. Robinson's December 28, 2007, COUNTY Jail intake form the following question(s), answer(s) and/or information is recorded:

> "ARE YOU DIABETIC? ARE YOU INSULIN DEPENDANT?" "YES."
>
> "INMATE IS AN INSULIN DEPENDANT DIABETIC"

71. On Mr. Robinson's July 3, 2008, COUNTY Jail intake form the following question(s), answer(s) and/or information is recorded:

> "TAKES HUMALOG AND LANTUS"

72. On Mr. Robinson's September 3, 2008, COUNTY Jail intake form the following question(s), answer(s) and/or information is recorded:

> "DO YOU PRESENTLY TAKE PRESCRIPTION MEDICATIONS?"
>
> "TAKES HUMULOG AND LANTUS FOR HIS DIABETES"

73. Additionally, on no less than two prior occasions defendants were ordered to release Mr. Robinson due to the severity of his medical condition.

74. On November 11, 2007, Mr. Robinson was released on his own recognizance to the medical squad.

75. On May 30, 2014, the City of Hayti Municipal Court, in a letter to the Pemiscot County Jail Division, set forth:

> "Michael D. Robinson is hereby released on Medical Release. Michael D. Robinson is to appear in Hayti Municipal Court on 06/06/2014 @5pm before Judge Calvin Ragland. Michael D. Robinson is to have his medicine and be prepared to serve his 48 hours at this time."

76. At no time during the events described in this complaint did plaintiff engage in any conduct which could or did cause defendants to disregard their duty to safeguard his health at all times when in their custody.

77. The refusals and failures of defendants to provide Mr. Robinson adequate medical treatment during the events described in this complaint were unwarranted, unwanted, harmful, unjustified, unlawful, unreasonable, unprivileged and deliberately indifferent to Mr. Robinson's rights and needs. They were also breaches of Defendants' duty.

## COUNTY Defendants' Pattern and Practice
## of Denying Medical Treatment

78. Plaintiffs are informed, believe and thereupon allege that COUNTY, its officials, policy makers, and/or its law enforcement officers, including but not limited to defendant SHERIFF, the other individual defendants named herein, and each of them, have on multiple occasions under-treated, failed and/or refused to provide adequate medical care to detainees in the Jail.

79. Plaintiffs are informed, believe and thereupon allege that defendant SHERIFF is unwilling and/or unable to impose effective discipline and/or

supervision upon his Jail employees, including but not limited to the individual defendants in this case, for their failures and refusals to provide adequate medical care to detainees in the Jail.

80. Plaintiffs are informed, believe and thereupon allege that other occasions upon which COUNTY, SHERIFF and Jail employees, including but not limited to the individual defendants in this case, have denied Jail detainees adequate medical care, include but are not limited to the following:

   a) On July 7, 2015, David Ham died in the Jail due to defendants' refusal and failure to provide him with seizure and diabetes medication;

   b) On January 9, 2015, after his earlier intake at the Jail, Michael Edward Robinson (not the decedent in the instant case) informed defendants that he required eye surgery to relieve pain and poor vision – and that he had a surgery scheduled which was important to his sight. Defendants refused to facilitate his attendance to his surgical appointment, or otherwise address his urgent medical needs, resulting in recurring pain and poor vision. In August of 2016, Mr. Robinson stated that during his period of confinement (including but not limited to January 2015 through August 2016), he "witnessed two inmates die because they asked for mediation or medical help and were refused and ignored[.]" Those two persons were likely Messrs. Michael Robinson (decedent in the instant case) and David Ham;

   c) On August 20, 2009, Antonio Ford had to undergo two surgeries for a deadly staphylococcus infection about which he complained to defendants for seven straight days, but which they ignored until a judge ordered Mr. Ford released on his own recognizance to obtain medical care;

d) On September 27, 2008, Steven Kiderlen was assaulted by three detainees and had his head repeatedly rammed into a steel bunk and concrete wall, leaving him with a black eye and severe swelling of his head. Thereafter, he began to have dizzy spells and major headaches. So, he made multiple requests for medical attention – all of which were denied. On the last occasion he made an in-person request for medical attention to defendants, he was told, "the Jail Administrator was not going to pull two (2) officers off of the road to take [him] to the hospital and that a way causing more paperwork." Thereafter, defendants fabricated reports that Mr. Kiderlen "refused to go to the hospital";

e) On every day between February 3, 2007 and June 11, 2007, Roosevelt Hearod complained that he needed dental pain and mental illness medications. However, on each of those days defendants refused Mr. Hearod's requests, and instead transferred him to solitary confinement in retaliation for his requests for help – leaving him to suffer;

f) Between February 19th and 26th, 2006, Kory Clay had to undergo surgery and intravenous antibiotics for a deadly staphylococcus infection about which he complained to defendants for four straight days, but which they ignored;

g) On June 16, 2005, defendants stopped issuing Alan Oliver the heart medication he was under a doctor's orders to receive. In so doing, they exposed him to a risk of clogged arteries.

*County Defendants' Unconstitutional Policy of Medical Treatment Denial*

81. Plaintiffs are informed, believe and thereupon allege that GREENWELL and each of the other individual defendants herein acted with deliberate

20

indifference and conscious disregard for Mr. Robinson's right to medical care by withholding and preventing access to such care until the point at which it was impossible for Mr. Robinson to successfully be revived.

82. GREENWELL implemented a policy and protocol in the Jail whereby no detainee would be permitted to have access to medical care without the permission of the jail administrator, defendant BOST. If BOST could not be contacted, medical treatment had to wait until BOST arrived at the jail the next day. There was no provision in GREENWELL'S policy for summoning emergency medical care by Jail personnel when BOST could not be contacted. Pursuant to GREENWELL'S policy, jail personnel, including but not limited to the individual defendants herein, willfully and deliberately refused to summon emergency medical services in the hours prior to the point at which Mr. Robinson became irreversibly unresponsive – even as they witnessed Mr. Robinson's rapidly declining medical status.

83. Furthermore, plaintiffs allege, upon information and belief, that the incidents mentioned in the preceding numbered paragraphs are the result of a failure of COUNTY to train its decisionmakers, supervisors and officers as to the appropriate protocol to follow in the provision of constitutionally mandated medical care to its detainees, and that such failure is in the face of an obvious likelihood that the violation of the constitutional rights of detainees will occur -- and has occurred.

84.    Plaintiffs specifically allege that Defendants' complained of acts and/or omissions, were within each of their control, and within the feasibility of each of them, to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein by Mr. Robinson and Plaintiffs.

## NATURE OF HARM

85. Each of the aforementioned acts and omissions by each Defendant directly, legally and proximately caused the following: violation of due process (all plaintiffs and Mr. Robinson); loss of enjoyment of due process (all plaintiffs and Mr. Robinson); extreme mental and emotional pain, suffering and anguish (all plaintiffs and Mr. Robinson); extreme physical pain, suffering and anguish (Mr. Robinson); deprivation of familial association (all plaintiffs); loss of enjoyment of familial association (all plaintiffs); loss of life (Mr. Robinson), loss of enjoyment of life (Mr. Robinson); loss of freedom of expression (Mr. Robinson), loss of enjoyment of freedom of expression (Mr. Robinson), detriment to lifestyle and quality of life (all plaintiffs); loss of love, services, companionship, comfort, instruction, guidance, counsel, training, and support (all plaintiffs); humiliation (all plaintiffs and Mr. Robinson); expenses associated with medical, funeral and burial costs (all plaintiffs as heirs to Mr. Robinson's estate).

## CLAIMS FOR RELIEF
## FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – 14th Amendment Due Process Violation
### Failure to Provide Medical Care to Pretrial Detainee
### BY PLAINTIFFS AGAINST COUNTY DEFENDANTS

86. Plaintiffs incorporate all preceding paragraphs, as though fully set forth herein.

87. This cause of action arises under United States Code, Title 42, Section 1983, wherein Plaintiffs seek to redress a deprivation under color of law of a right, privilege or immunity secured to Mr. Robinson by the Fourteenth Amendment to the United States Constitution.

22

88. Mr. Robinson was held in custody on no less than one warrant for criminal charges upon which his guilt had yet to be adjudicated by any court of law. Thus, to the extent he was a pretrial detainee, Mr. Robinson was entitled to proper medical care pursuant to the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

89. As set forth in more detail herein above throughout this complaint, all COUNTY DEFENDANTS – Pemiscot County, Greenwell, Bost, Coleman, Cobbs, Armstrong, Tate, Crooks, Akins, Nixon and Warren, and each of them, chose not to even bother with attempting to provide Mr. Robinson medical care until he had gone into irreversible diabetic shock – even though they were aware all along of his dire need for medical attention and near fatal condition through their own observations of Mr. Robinson and/or through information conveyed to them through Jail staff or detainees.

90. As a direct and proximate result of the aforementioned acts, omissions and deliberate indifference of each of the defendants, Mr. Robinson was denied any chance of survival and died.

## SECOND CLAIM FOR RELIEF

### 42 U.S.C. § 1983 – 14th Amendment Due Process Violation
### Deprivation of Familial Association
### BY PLAINTIFFS AGAINST ALL COUNTY DEFENDANTS

91. Plaintiffs incorporate all preceding paragraphs, as though fully set forth herein.

92. This cause of action arises under United States Code, Title 42, Section 1983, wherein Plaintiffs seek to redress a deprivation under color of law of a right, privilege or immunity secured to Plaintiffs by the Fourteenth Amendment to the United States Constitution.

23

93. COUNTY DEFENDANTS – Pemiscot County, Greenwell, Bost, Coleman, Cobbs, Armstrong, Tate, Crooks, Akins, Nixon and Warren, and each of their acts and/or omissions as alleged in throughout this entire complaint constituted interference with and/or deprivation of Plaintiffs' familial relationships and/or association with Mr. Robinson and were thus violations of Plaintiffs' Fourteenth Amendment Rights to Due Process of Law.

94. Upon information and belief, defendants intended to interfere, and did interfere, with the relationships between Mr. Robinson and each of his three daughters – the plaintiffs in this case.

95. Upon information and belief, defendants knew Mr. Robinson was the father of three children because his Jail intake form indicates "# Of Children: 3." Defendants also knew Mr. Robinson was a father because one of the warrants upon which he was being held was for child support. Defendants knew that Mr. Robinson could not relate to his children while confined in the Jail. Further, defendants knew that if fatal harm befell Mr. Robinson while in the Jail, any relationships he had with his daughters would be impaired – to say the least. Nevertheless, defendants intentionally refused Mr. Robinson life-saving medical care which they knew he needed.

## THIRD CLAIM FOR RELIEF
**42 U.S.C. § 1983 – 8th Amendment Cruel and Unusual Punishment**
**Failure to Provide Medical Care to Post Conviction Detainee**
**BY PLAINTIFFS AGAINST ALL COUNTY DEFENDANTS**

96. Plaintiffs incorporate all preceding paragraphs, as though fully set forth herein.

97. This cause of action arises under United States Code, Title 42, Sections 1983 and 1988, wherein Plaintiffs seek to redress a deprivation under color of law of a right, privilege or immunity secured to Mr. Robinson by the Eighth Amendment to the United States Constitution.

98. Mr. Robinson was held in custody on no less than one warrant for criminal charges upon which his guilt had been adjudicated by a court of law. Thus, to the extent he was a post-conviction detainee, Mr. Robinson was entitled to proper medical care pursuant to the Eighth Amendment of the United States Constitution.

99. As set forth in more detail herein above throughout this complaint, all COUNTY DEFENDANTS – Pemiscot County, Greenwell, Bost, Coleman, Cobbs, Armstrong, Tate, Crooks, Akins, Nixon and Warren, and each of them, chose not to even bother with attempting to provide Mr. Robinson medical care until he had gone into irreversible diabetic shock – even though they were aware all along of his dire need for medical attention and near fatal condition through their own observations of Mr. Robinson and/or through information conveyed to them through Jail staff or detainees.

100. As a direct and proximate result of the aforementioned acts, omissions and deliberate indifference of each of the defendants, Mr. Robinson was denied any chance of survival and died.

## <u>FOURTH CLAIM FOR RELIEF</u>
### Violation of Civil Rights 42 U.S.C. § 1983
### Violation of First Amendment Right of Free Speech
### BY PLAINTIFFS AGAINST ALL COUNTY DEFENDANTS

101. Plaintiffs incorporate all preceding paragraphs, as though fully set forth herein.

102.  This cause of action arises under United States Code, Title 42, Section 1983, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege or immunity secured to him by the First Amendment to the United States Constitution.

103.  The First Amendment to the Constitution of the United States guarantees Plaintiff's freedom of speech and assembly permitting Plaintiff to, inter alia, freely and lawfully express opinions or ideas. This expression may be accomplished verbally.

104.  From first arriving at the Jail, and before becoming too weak to do so, Mr. Robinson complained incessantly that he needed medical care – and that he should also get an "O-R," own recognizance release.

105.  On prior occasions, one or more courts of competent jurisdiction ordered SHERIFF and his employees, the other individual defendants in this case, to release Mr. Robinson on his own recognizance so that he could retrieve his diabetes medication.

106.  Plaintiffs are informed, believe and thereupon allege that during Mr. Robinson's August 2015 confinement in the Jail, Defendants Greenwell, Bost, Coleman, Cobbs, Armstrong, Tate, Crooks, Akins, Nixon and Warren, and each of them, took Mr. Robinson's medical complaints and O-R requests as challenges to their authority and that defendants retaliated against Mr. Robinson by giving him neither of the two things he asked for – so as to punish and silence him.

107.  In addition to inaction in the face of Mr. Robinson's dire medical needs and condition, defendants further retaliated against him for his speech by isolating him in a solitary confinement cell.

108.  The actions taken against Mr. Robinson by defendants were of a nature, intensity and duration to chill the speech of a person of ordinary fortitude, and did chill Mr. Robinson's speech.

109.  As a direct and proximate result of the aforementioned acts, omissions and deliberate indifference of each of the defendants, Mr. Robinson was denied any chance of survival and died.

<u>**FIFTH CLAIM FOR RELIEF**</u>
**Violation of Civil Rights 42 U.S.C. §§ 1983, 1988**
**Conspiracy to Violate Civil Rights**
**BY PLAINTIFFS AGAINST ALL INDIVIDUAL**
**COUNTY DEFENDANTS**

110.  Plaintiffs incorporate all preceding paragraphs, as though fully set forth herein.

111.  This cause of action arises under United States Code, Title 42, Section 1983 and 1988, wherein Plaintiffs seeks to redress a deprivation under color of law of a right, privilege or immunity secured to themselves and Mr. Robinson by the First, Eighth and Fourteenth Amendments to the United States Constitution.

112. Defendants Greenwell, Bost, Coleman, Cobbs, Armstrong, Tate, Crooks, Akins, Nixon and Warren, and each of them:

   a)  had a joint and simultaneous duty to make sure that Mr. Robinson's medical needs were met;

   b)  had joint and simultaneous knowledge that Mr. Robinson's medical needs were not being met;

   c)  with such duty, knowledge and a meeting of the minds, took joint action at the same time and in the same place to collaborate to refuse to provide Mr. Robinson access to medical treatment. Thus, forming a 'pact of denial' such that for the several hours Mr. Robinson suffered, complained, and was complained on behalf of prior to going into shock – not a single one of the individual

27

defendants in this case lifted a finger to provide Mr. Robinson with medical care;

d) acted as described herein above, in conspiracy with, and with the agreement, permission, ratification, and approval of, each other to violate Plaintiff's civil rights as stated herein.

113. As a direct and proximate result of the aforementioned acts, omissions and deliberate indifference of each of the defendants, Mr. Robinson was denied any chance of survival and died.

## SIXTH CLAIM FOR RELIEF
### Violation of Civil Rights 42 U.S.C. § 1983
### Unconstitutional Policy, Custom or Procedure – (*Monell*)
### BY PLAINTIFFS AGAINST ALL COUNTY DEFENDANTS

114. Plaintiffs incorporate all preceding paragraphs, as though fully set forth herein.

115. This cause of action arises under United States Code, Title 42, Section 1983, wherein Plaintiffs seeks to redress a deprivation under color of law of a right, privilege or immunity secured to themselves and Mr. Robinson by the First, Eighth, and Fourteenth Amendments to the United States Constitution.

116. Defendants violated Plaintiffs' and Mr. Robinson's constitutional rights, as alleged herein above, by creating and maintaining the following unconstitutional customs and practices, *inter alia:*

117. Plaintiffs are informed, believe and thereupon allege that Defendants have a de facto policy, custom or practice of retaliating against persons who exercise their First Amendment right of freedom expression to complain about their treatment in the Jail and make statements and or requests to which Jail employees disagree or take offense;

28

118.  Plaintiffs are informed, believe and thereupon allege that Defendants have a de facto policy, custom or practice of inadequately investigating, disciplining and/or terminating Jail employees upon detainees' complaints of misconduct and/or incidents where detainees are harmed;

119.  Plaintiffs are informed, believe and thereupon allege that Defendants have a de facto policy, custom or practice of failing to provide legally required and medically necessary care to detainees in the Jail in violation of their constitutional rights;

120.  Defendants policies or customs caused and were the moving force or affirmative link behind some or all of the violations of Plaintiffs' and Mr. Robinson's constitutional rights at issue in this case;

121.  Plaintiffs are informed, believe and thereupon allege that these policies, practices, customs and procedures are intentional or the result of deliberate indifference on the part of Defendants, by and through their decision makers.

122.  The foregoing unconstitutional customs and practices were a direct and proximate cause of harm to Plaintiffs and Mr. Robinson.

### SEVENTH CLAIM FOR RELIEF
**Supplemental State Law Claim – Wrongful Death**
**[ Mo. Rev. Stat. § 537.080 ]**
**BY PLAINTIFFS AGAINST ALL COUNTY DEFENDANTS**

123.  Plaintiffs incorporate all preceding paragraphs, as though fully set forth herein.

124.  This cause of action arises under the general laws and statutes of the State of Missouri and is brought by all plaintiffs against all COUNTY DEFENDANTS – Pemiscot County, Greenwell, Bost, Coleman, Cobbs, Armstrong, Tate, Crooks, Akins, Nixon and Warren, and each of them.

125.  Plaintiffs are the only members of the class entitled to bring this action pursuant to Mo. Rev. Stat. §537.080(2).

126. In committing the aforesaid acts and omissions specified in all paragraphs herein above, each of these defendants were negligent and careless in the care and treatment of Mr. Robinson in all respects, including but not limited to the following:

    a) Defendants failed to summon medical care for Mr. Robinson when, in the exercise of reasonable care, they could have reasonably done so;

    b) Defendants failed to respond to the requests of Mr. Robinson for medical care;

    c) Defendants failed to respond to the warnings from other detainees regarding the Mr. Robinson's perilous medical condition;

    d) Defendants failed to monitor Mr. Robinson's serious and life threatening medical condition when they actually knew or should have known that Mr. Robinson's medical condition placed him at immediate risk of death if he was denied medical care;

127. As a direct and proximate result of the aforementioned acts and omissions of each of the defendants, Mr. Robinson was denied any chance of survival and died.

128. Each defendant's aforementioned acts and omissions were willful, wanton, malicious and in conscious disregard of Mr. Robinson's rights entitling the plaintiffs to an award of punitive damages.

129. As a result of the conduct complained of herein, Plaintiffs pray for judgment in an amount that is fair and reasonable against each defendant in excess of twenty-five thousand dollars as and for actual damages and in an amount that is fair and reasonable as and for punitive damages, costs,

and other relief the court deems just and equitable.

130.  Plaintiffs specifically allege that Defendants' complained of acts and/or omissions, were within each of their control, and within the feasibility of each of them, to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein by Plaintiffs.


## EIGHTH CLAIM FOR RELIEF

### Supplemental State Law Claim – Lost Chance of Survival

### [ Mo. Rev. Stat. § 537.021(1) ]

### BY PLAINTIFFS AGAINST ALL COUNTY DEFENDANTS

131.  Plaintiffs incorporate all preceding paragraphs, as though fully set forth herein.

132.  This cause of action arises under the general laws and statutes of the State of Missouri and is brought by all plaintiffs against all COUNTY DEFENDANTS – Pemiscot County, Greenwell, Bost, Coleman, Cobbs, Armstrong, Tate, Crooks, Akins, Nixon and Warren, and each of them.

133. In committing the aforesaid acts and omissions specified in all paragraphs herein above, each of these defendants were negligent and careless in the care and treatment of Mr. Robinson in all respects, including but not limited to the following:

  e) Defendants failed to summon medical care for Mr. Robinson when, in the exercise of reasonable care, they could have reasonably done so;

  f) Defendants failed to respond to the requests of Mr. Robinson for medical care;

  g) Defendants failed to respond to the warnings from other detainees regarding the Mr. Robinson's perilous medical condition;

h) Defendants failed to monitor Mr. Robinson's serious and life threatening medical conditions when they actually knew or should have known that Mr. Robinson's medical conditions placed him at immediate risk of death if he was denied medical care;

i) Each individual defendant, as a COUNTY employee at the Jail, breached his or her duty to Mr. Robinson by failing in all of the above respects.

134. As a direct and proximate result of the aforementioned acts and omissions of each of the defendants, Mr. Robinson was denied any chance of survival and died.

135. Each defendant's aforementioned acts and omissions were willful, wanton, malicious and in conscious disregard of Mr. Robinson's rights entitling the plaintiffs to an award of punitive damages.

136. As a result of the conduct complained of herein, Plaintiffs pray for judgment in an amount that is fair and reasonable against each defendant in excess of twenty-five thousand dollars as and for actual damages and in an amount that is fair and reasonable as and for punitive damages, costs, and other relief the court deems just and equitable.

137. Plaintiffs specifically allege that Defendants' complained of acts and/or omissions, were within each of their control, and within the feasibility of each of them, to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein by Mr. Robinson and Plaintiffs.

## NINTH CLAIM FOR RELIEF

### Supplemental State Law Claim – Negligence

### Failure to Comply With Missouri Revised Uniform Anatomical Gift Act

## [ Mo. Rev. Stat. § 194.210 et seq. ]
## BY PLAINTIFFS AGAINST DEFENDANT MID-AMERICA TRANSPLANT SERVICES

138. Plaintiffs incorporate all preceding paragraphs, as though fully set forth herein.

139. This cause of action arises under the general laws and statutes of the State of Missouri and is brought by all plaintiffs against defendant Mid-America Transplant Services ("MTS").

140. At all times material herein, defendant MTS should have acted reasonably to avoid, or foresee, the risk that said DEFENDANTS themselves, or their colleagues, agents or subordinates, would expose reasonably foreseeable persons, such as plaintiffs, to reasonably foreseeable risks of harm or injury.

141. Defendant MTS breached its duty of care by not acting reasonably under the circumstances of such risk, by: failing to timely communicate the nature and scope of organ harvesting it proposed to perform upon Mr. Robinson; failing to obtain timely family consent; failing to timely engage in harvesting procedures; and failing to otherwise observe the standard of care pertaining to Plaintiffs' interests under Mo. Rev. Stat. § 194.210 *et seq*.

142. Defendant MTS' aforesaid breaches of duty were proximate and actual causes of injury to Plaintiffs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs E.R., M.T. and C.M. pray for the following relief from Defendants, and each of them, for each of the above causes of action:

1.      For damages for loss of love, services, companionship, comfort, instruction, guidance, counsel, training, and support;

**WHEREFORE**, Plaintiff Estate prays for the following relief from Defendants, and each of them, for each of the above causes of action:

2.      For damages for pre-death pain and suffering, loss of life and loss of enjoyment of life;

**WHEREFORE**, ALL Plaintiffs pray for the following relief from Defendants, and each of them, for each of the above causes of action:

3.      For compensatory damages, including general and special damages, according to proof;

4.      For punitive damages (except as to COUNTY and MTS) pursuant to 42 U.S.C. §1983 and the common and statutory law of the State of Missouri, and any other applicable laws or statutes, in an amount sufficient to deter and make an example of each non-governmental entity Defendant;

5.      For statutory damages, according to proof,

6.      For prejudgment and post-judgment interest according to proof;

7.      For reasonable attorney fees pursuant to 42 U.S.C. §§ 1983, 1988, the common and statutory law of the State of Missouri, and any other applicable provisions;

8.      For costs of suit; and

9.      For such further relief which is just and proper.

## **<u>JURY DEMAND</u>**

Plaintiffs hereby demand trial by jury on all issues so triable.


Respectfully submitted,
DATE: August 15, 2017

THE WILBERS LAW FIRM, LLC


 /s/ - *John L. Wilbers, Esq.*

_____

John L. Wilbers, Esq.
130 S. Bemiston Ave., Suite 603
Clayton, Missouri  63105
T:  314.721.3040
F:   314.721.3052
jwilbers@thewilberslawfirm.com


PARKS & CRUMP, LLC


 /s/ - *Benjamin L. Crump, Esq.*

_____

Benjamin L. Crump, Esq.
FL Bar No. 0072583
240 N. Magnolia Drive
Tallahassee, FL 32301
T:  850.222.3333
F:   850.224.6679
bcrump@parkscrump.com


THE BAEZ LAW FIRM


 /s/ - *Jose A. Baez, Esq.*

_____

Jose A. Baez, Esq.
FL Bar No. 013232

*continued on next page ...*

35

_____
Complaint for Damages and Jury Demand

40 SW 13th Street, Suite 901
Miami, FL 33130
T:  305.999.5100
F:  305.999.5111
jose@baezlawfirm.com


ORANGE LAW OFFICES

Olu K. Orange, Esq.
CA Bar No. 213653
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
T:  213.736.9900 ext. 103
F:  213.417.8800
orangelawoffices@att.net


LAW OFFICE OF ROBERT N.
HAFERD

 /s/ - *Robert N. Haferd, Esq.*

Robert N. Haferd, Esq.
CA Bar No. 272242
715 Gresham Street, N.W.
Washington, DC 20001
T:  202.750.1665
F:  208.379.8639
haferdlaw@gmail.com